UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

STEVEN R. GROGAN,                          )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )    No. 2:26-cv-00035-JPH-MJD
                                           )
SAMUEL BYRD Dr., et al.,                   )
                                           )
                    Defendants.            )

**ORDER SCREENING COMPLAINT AND
DIRECTING FURTHER PROCEEDINGS**

Plaintiff, Steven R. Grogan, is a prisoner currently incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). He filed this civil action alleging constitutional violations against the defendants related to deficient medical care when his back was injured. Because Mr. Grogan is a prisoner, the Court must screen his complaint. 28 U.S.C. § 1915A. Prior to screening the original complaint, Mr. Grogan filed a motion to amend his complaint to add additional defendants. Dkt. 11. Mr. Grogan's motion, dkt. [11] is **granted.** The **clerk is directed** to docket Mr. Grogan's exhibit at docket 11-2 at pages 1–15 as the operative complaint.

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil

1

Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).

Under that standard, a complaint must include "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). The Court construes *pro se* complaints liberally and holds them to

a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v.*

*Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Grogan asserts claims against five defendants: 1) Dr. Samuel Byrd,

2) NP Kayla Kellams, 3) RN Jodi Scott, 4) Officer Shephard, and 5) Centurion

Health of Indiana, LLC. He seeks monetary damages and injunctive relief.

Mr. Grogan's factual allegations, as summarized here, are accepted as

true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir.

2023). Mr. Grogan previously had surgery on a lumbar disc that was causing

him chronic pain. Dkt. 11-2 at 3. Over time, Mr. Grogan's chronic back pain

increased, and Dr. Byrd provided him Keppra, Trileptal, and Cymbalta, which

all proved ineffective. *Id.* at 4. Numerous times in 2021 and 2022, Mr. Grogan

reinjured his back and experienced chronic pain. *Id.* He continued to file

numerous healthcare request forms and was prescribed Mobic in February of

2025. *Id.* at 5. Because the Secured Housing Unit ("SHU") had all bottom

bunks, Mr. Grogan chose to remain within the SHU to prevent reinjury of his

2

back. *Id.* Mr. Grogan was not provided x-rays for his back or ever provided a bottom bunk pass, orthopedic mat, knee brace, physical therapy, or an MRI. *Id.* Mr. Grogan alleges that Dr. Byrd persisted in ineffective treatment and was deliberately indifferent to his chronic back pain. *Id.* at 5–6.

Mr. Grogan saw NP Kellams after submitting healthcare request forms for nearly a week. *Id.* at 6. He complained to her of extreme back pain and blood in his urine. *Id.* She prescribed him Mobic and an NSAID, but both were ineffective in treating his pain. *Id.* He then saw Nurse Scott on June 10 and June 25 and complained of the same symptoms. *Id.* Nurse Scott was dismissive and told him to fill out a healthcare request form. *Id.* Mr. Grogan complained of these issues to Officer Shephard, who frequently accompanied him to appointments. *Id.* at 7. Officer Shephard told him "yeah, medical sucks here." *Id.*

On July 8, 2025, Mr. Grogan's family contacted the facility to have him seen by medical, and Mr. Grogan filed numerous healthcare request forms and grievances to request a medical appointment. *Id.* at 8. On July 17, he was seen by NP Kellams, and she ordered testing for him that was completed two weeks later. *Id.* On August 19, 2025, he again submitted a healthcare request form, and medical responded stating that he had refused treatment. *Id.* at 9.

Mr. Grogan denies ever refusing this treatment but stated he told officers he was in too much pain to walk and requested the nurse to visit his cell. *Id.* By September of that year, Mr. Grogan alleges he had had a urinary infection for the past three months and was taking antibiotics from other inmates for

treatment. *Id.* He had another appointment with NP Kellams, who ordered stool samples but no antibiotics. *Id.* Mr. Grogan continued to submit healthcare request forms but failed to receive antibiotics or a bottom bunk pass despite repeated requests. *Id.* at 10. Although he frequently requested assistance from Nurse Jodi Scott, she would simply tell him to fill out a healthcare request. *Id.* at 11. Mr. Grogan still was not seen in December of 2025 despite multiple healthcare request forms. *Id.* at 12.

Mr. Grogan alleges that Centurion has a policy or practice of denying surgeries or MRIs because of cost and failing to obtain inmates' medical records from non-prison providers. *Id.* at 11, 13.

### III. Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

Mr. Grogan's claim against Officer Shephard in his individual capacity is **dismissed** for failure to state a claim upon which relief may be granted. To state an Eighth Amendment claim based on inadequate medical care, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

4

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Eagan v. Dempsey*, 987 F.3d 667, 695 (7th Cir. 2021) (cleaned up).

Mr. Grogan has failed to state a viable claim of deliberate indifference against Officer Shephard. Mr. Grogan has not alleged facts plausibly supporting a finding that Officer Shephard had authority to change the medical providers' treatment decisions. *See King v. Kramer*, 680 F.3d 1013, 1019 (7th Cir. 2012) (nonmedical prison officials may defer to medical providers' treatment decisions unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." (cleaned up)).  And any failure to get Mr. Grogan quicker medical treatment does not constitute deliberate indifference when Mr. Grogan was consistently seeing medical providers. *See id.* Though Mr. Grogan alleges that Officer Shepard said, "yeah, medical sucks here," dkt. 11-2 at 7, that statement is too vague to suggest that Officer Shepard knew, or had reason to know, that medical providers were mistreating prisoners.

Mr. Grogan's Eighth Amendment medical deliberate indifference claims for damages against Dr. Samuel Byrd, NP Kayla Kellams, and RN Jodi Scott **SHALL PROCEED** in their individual capacities.

An Eighth Amendment deliberate indifference claim **SHALL PROCEED** under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against Centurion Health of Indiana, LLC.

### IV. Motion for Appointment of Counsel

Mr. Grogan has filed a motion for counsel. Dkt. 3. For the reasons explained below, Mr. Grogan's motion, dkt. [3], is **denied.**

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654

6

(7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Plaintiff has not indicated whether he has attempted to contact any attorneys with requests for representation. Accordingly, the Court finds that he has not made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. *See Thomas*, 912 F.3d at 978. His motion for appointment of counsel, dkt. [3], must therefore be **denied.**

However, because Mr. Grogan attributes his difficulty litigating this case to his confinement in segregation, the Court continues to the second inquiry. "The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular

plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan, 987 F.3d at 682* (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

Mr. Grogan has not satisfied the second inquiry. Though Mr. Grogan states that his incarceration greatly limits his ability to litigate, that is true of all pro se prisoner plaintiffs, including those in and outside of segregation. Likewise, Mr. Grogan states that he has limited knowledge of the law, but that is also true of many prisoners. Further, while Mr. Grogan states that his case is complex, the Court finds that the facts supporting Mr. Grogan's claims are not particularly complex and are within his personal knowledge. Mr. Grogan clearly articulated the various ways in which he allegedly experienced deficient medical care at the hands of the defendants. Moreover, to the extent that Mr. Grogan has concerns regarding presenting evidence and testimony at trial, this case is in its early stages, and no trial date has been set. Mr. Grogan is capable of exchanging discovery with the defendants without counsel's assistance. At this juncture, the Court concludes that Mr. Grogan is capable of litigating the case on his own.

### V. Conclusion and Issuance of Process

In conclusion, Mr. Grogan's motion for appointment of counsel, dkt. [3], is **denied without prejudice**. The Court will remain alert to any changes in

circumstances, such as the setting of a hearing or trial, that may warrant reconsideration of this Order.

The **clerk is directed** to send Mr. Grogan a motion for assistance recruiting counsel form, which he must use if he chooses to renew his motion.

Mr. Grogan's motion to amend his complaint is **granted**. Dkt. [11]. The clerk is directed to docket Mr. Grogan's exhibit at docket 11-2 at pages 1–15 as the operative complaint.

The action **will proceed** with Eighth Amendment claims for damages against Dr. Samuel Byrd, NP Kayla Kellams, and RN Jodi Scott in their individual capacities pursuant to 42 U.S.C. § 1983, and an Eighth Amendment deliberate indifference claim under the theory announced in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) against Centurion Health of Indiana, LLC.

The discussion of claims in Part III includes every claim the Court identified in the complaint. If Mr. Grogan believes he asserted additional claims that the Court failed to address, he must file a motion to reconsider this order **no later than July 30, 2026**.

The **clerk is directed** to terminate Correctional Officer Shephard as a defendant on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants electronically in the manner specified by Rule 4(d). Process will consist of the complaint (dkt. [11-2], pages 1–15), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this order.

9

The **clerk is directed** to serve Dr. Samuel Byrd, NP Kayla Kellams, and RN Jodi Scott, employees of Centurion, electronically.

Defendants Dr. Samuel Byrd, NP Kayla Kellams, and RN Jodi Scott are identified as Centurion employees. Centurion is **ORDERED** to provide the full name and last known address of any defendant identified as a Centurion employee who does not waive service if it has such information. This information may be provided to the court informally or may be filed ex parte.

**SO ORDERED.**

Date: 7/2/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

STEVEN R. GROGAN
268424
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Electronic Service to Centurion and Employees:

Dr. Samuel Byrd
NP Kayla Kellams
RN Jodi Scott

(All at Wabash Valley Correctional Facility)

10